UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

SHONNA HINKLE )
)
v. ) No. 2:17-CV-54
)
NANCY A. BERRYHILL, )
   Acting Commissioner of Social Security )
)

**MEMORANDUM OPINION AND ORDER**

This matter is before the United States Magistrate Judge with the consent of the parties and by order of reference [Doc. 16] for disposition and entry of a final judgment. Plaintiff's application for disability insurance benefits and supplemental security income ("SSI") under Titles II and XVI, of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1385, was denied after a hearing before an Administrative Law Judge ("ALJ"). This action is for judicial review of the Commissioner's final decision per 42 U.S.C. § 405(g). Each party filed a dispositive motion [Docs. 21 & 24] with a supporting memorandum [Docs. 22 & 25]. The matter is now ripe for review.

**I.    Standard of Review**

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Sec. of Health & Human Servs.*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745

F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Listenbee v. Sec. of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## II. Sequential Evaluation Process

The applicable administrative regulations require the Commissioner to utilize a five-step sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's RFC, can he or she perform his or her past relevant work?
>
> 5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4). A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.,* 109 F.3d 270, 274 (6th Cir. 1997). The burden shifts to the Commissioner with respect to the fifth step if the claimant satisfies the

first four steps of the process. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

**III.     Background and Procedural History**

Plaintiff was born in 1975, a younger person under the guidelines, at the time she alleged disability (Doc. 13, Transcript p. 30) (reference to "Tr" and the page denote the administrative record). In a Disability Report, she alleged she was disabled from chronic obstructive pulmonary disease (COPD), asthma, panic disorder, memory loss, muscle weakness, pain, tremors, autoimmune disorder, high blood pressure, migraines, intermittent irritable bowel syndrome (IBS), and extreme fatigue (Tr. 222). Plaintiff has at least a high school education and is able to communicate in English (Tr. 30). Plaintiff reported that she worked as a LPN from 2000 to 2011, but was fired due to poor job performance (Tr. 41, 223). Plaintiff attempted other work after that, including work at a call center and as a cashier, but quit, in part due to anxiety and difficulty getting along with co-workers (Tr. 227, 41).

In October 2015, an ALJ conducted an evidentiary hearing in which Plaintiff and a vocational expert ("VE") testified (Tr. 40-52). The ALJ found Plaintiff was not disabled under the Act and denied benefits (Tr. 18-32). Plaintiff now appeals to this Court.

**IV.     Evidence in the Record**

The ALJ adequately summarized the medical record in this case. Both parties also provided detailed summaries of the course of medical treatment of Plaintiff. The following are the relevant facts.

Plaintiff's alleged disability onset date is November 15, 2011 (Tr. 18). On February 1, 2012, Plaintiff presented to First Assist Urgent Care for treatment of depression, worsened by stress, anxiety, and fatigue (Tr. 317). She was prescribed Cymablta (Tr. 318). The very next day, Plaintiff visited Doctor's Care, complaining of headaches, depression, and insomnia (Tr. 311-12).

Two weeks later, she presented to Doctor's Care for follow up, with slight improvement reported (Tr. 309). Her prescription for Zoloft was increased (Tr. 310).

Again, on April 23 and May 4, 2012, Plaintiff presented to First Assist with similar complaints and was continued on her same medications (Tr. 324, 348). On June 12, 2012, she was referred to Allen Musil, M.D., for psychiatric treatment (Tr. 295). Dr. Musil noted that she was "alert and oriented X 4;" her mood was anxious; her thought processes were logical, linear and goal directed (Tr. 296). She reported depression, but she denied sadness, or crying spells, impulsivity, anger, outbursts, or other aggressive behaviors. Dr. Musil noted that her "[i]nsight and judgment are without obvious deficit." (Tr. 296). He also opined that he expected that treatment would improve her mental health status and functioning. (Tr. 296). She reported sleeping well most nights. He diagnosed her with major depressive disorder, generalized anxiety disorder. (Tr. 296).

On March 18, 2013, Krish Purswani, M.D., conducted a consultative physical examination of Plaintiff (Tr. 299). Plaintiff complained of sporadic tremors, affecting either her whole body or just her hands (Tr. 299). She said the tremors increased with stress (Tr. 299). Plaintiff also complained of short-term memory loss over the last year, as well as chronic fatigue, headaches, poor sleep, and depression (Tr. 299). Dr. Purswani confirmed "slight tremor on both outstretched hands." (Tr. 301). He noted 5/5 strength in both upper and lower extremities, and toe and heel strengths were normal bilaterally. Contrary to what she represented to Dr. Musil, she complained that she had not sleep well for over a year. (Tr. 299). Dr. Purswani opined that Plaintiff can frequently lift 35 pounds for half the time in an eight-hour work day, could stand/walk for a total of six hours in an eight-hour work day, and could sit for eight hours (Tr. 302).

Arthur Stair, M.A., SPE, conducted a consultative psychological examination on March

4

19, 2013 (Tr. 303). Plaintiff complained of panic and depression, with difficulty feeling motivated (Tr. 303). She also reported being nervous in public or when she has to go into stores (Tr. 303). She reported poor memory and constant anxiety (Tr. 303). According to Plaintiff, "she stays involved with her neighbor" and avoids most other people (Tr. 304). Mr. Stair found that she was oriented as to person, place, time and situation. (Tr. 304). She demonstrated an average ability in answering logic-based problems. "Her short term memory was intact as she was able to accurately recall three previously memorized items after five minutes had elapsed." (Tr. 305). Mr. Stair stated that Plaintiff's ability to follow directions was not impaired, nor was her ability to comprehend and implement multi-step complex instructions. Mr. Stair noted that her ability to maintain persistence and concentration on tasks would be mildly impaired (Tr. 306). He also opined that her ability to adapt to changes in the workplace would be mildly to moderately impaired. He also opined that she would be moderately impaired in social relationships (Tr. 306).

On April 9, 2014, Robert Blaine, M.D., conducted a consultative physical examination of Plaintiff (Tr. 483). Dr. Blaine diagnosed muscle weakness and myalgia, COPD, possibly autoimmune disorder, migraines, but noted no tremors (Tr. 485). Plaintiff also suggested she might have fibromyalgia, and he noted she was tender in 12 of 18 points tested. That notwithstanding, Dr. Blaine did not diagnose her with fibromyalgia (Tr. 483, 485). Dr. Blaine opined that Plaintiff could lift and carry five pounds frequently, 25 pounds infrequently, and stand/walk for four hours in an eight-hour workday with reasonable rest (Tr. 485).

On April 17, 2014, Chad Sims, Ph.D., H.S.P, performed a psychological consultative evaluation (Tr. 494). Plaintiff complained of memory loss and panic disorder (Tr. 494). She also claimed she suffered from depression, poor energy levels, crying spells, and anxiety, among other ailments (Tr. 496). Dr. Sims found her to fall into the average range of intellectual functioning and

that she showed no signs of short-term memory impairment. He observed that she showed evidence of mild impairment in her ability to sustain concentration and relating socially, and mildly impaired in her ability to adapt to change, and no impairment in memory (Tr. 497, 499).

William Clever, FNP, completed a medical source statement on June 18, 2014 (Tr. 502). In his opinion, Plaintiff could not be reasonably expected to be reliable in attending an eight-hour day, 40 hour work week job, without missing more than two days per month (Tr. 502). He also reported no limitations in sitting, standing, stooping, or climbing, and found she could frequently lift and carry 10 pounds (Tr. 502). He indicated her pain was five out of ten, a "moderate" score (Tr. 502). In an average workday, she would be "off task" 60% of the time (Tr. 503). He opined that she would be frequently precluded from understanding simple, short instructions, performing activities within a schedule, sustaining an ordinary routine, and maintaining attention and concentration for extended periods of time (Tr. 503). He also opined that she would have limitations in interacting appropriately with the general public, asking simple questions or requesting assistance, accepting instructions and responding to criticism, getting along with co-workers or peers, and maintaining appropriate levels of cleanliness (Tr. 503).

At the hearing, Plaintiff testified as to her limitations (Tr. 40-47). The ALJ posed a hypothetical to the vocational expert ("VE") regarding an individual who was limited to light work, with no exposure to excessive dust or fumes, limited to simple, repetitive tasks, working with things rather than people, and those types of jobs where Plaintiff could relate to co-workers and supervisors (Tr. 47-48). The VE identified the jobs of food preparer (exclusive of fast food), with 5,000 jobs in Tennessee and 176,000 nationally; inventory clerk, with 222,000 nationally; and mail sorter, 100 jobs in Tennessee and 72,000 nationally (Tr. 48). The ALJ also posed the same hypothetical, but added the restriction that the individual could not work fifteen percent of the

time, due to the inability to function or attend (Tr. 48). In response to that question, the VE indicated the restriction would preclude employment (Tr. 48).

## V. The ALJ's Findings

The ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2016 (Tr. 20). The ALJ also found that she had not engaged in substantial gainful activity since November 15, 2011, the alleged onset date (Tr. 20). The ALJ found that Plaintiff had the severe impairments of chronic obstructive pulmonary disease (COPD) and anxiety (Tr. 20).

The ALJ next determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments found in 20 C.F.R. Part 404, Subpart P, App'x 1 (20 CFR § 404.1520(d), 416.920(d)) (Tr. 22). The ALJ considered the Listing 3.02 (chronic pulmonary insufficiency). The ALJ noted that Plaintiff's COPD did not meet the listing because the pulmonary function testing showed only mild obstruction and all chest x-rays were normal. (Tr. 22).

Regarding Plaintiff's mental impairment, the ALJ also found her condition did not meet a listing. In making this finding, the ALJ found Plaintiff's impairments did not cause at least two marked limitations or one marked limitation with repeated episodes of decompensation in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace (Tr. 22). He noted that Plaintiff was only mildly restricted in her activities of daily living, as she can shop for groceries, handle finances, do light house cleaning, prepare meals, watch television, use the internet and care for her children.(Tr. 22). In social functioning, he noted Plaintiff had moderate difficulties as she reported some problems with being around others. However, the ALJ noted that she also reported no problems getting along with others (Tr. 22). He noted moderate difficulties regarding maintaining concentration, persistence or pace. While she

7

claimed she suffered from memory loss and had trouble concentrating, the consultative examinations revealed she had only minor memory impairment and her short-term memory was not affected at all (Tr. 22).

The ALJ then determined Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) (Tr. 23). However, the ALJ further restricted her to simple, routine jobs, working with things rather than people, able to relate to co-workers and supervisors, with no exposure to excessive dust or fumes (Tr. 23). In reaching this determination, the ALJ considered all of her impairments, even those that were not severe (Tr. 19-22). The ALJ noted the medical evidence, including the treatment record, did not support the degree of limitations alleged by Plaintiff (Tr. 26). The ALJ noted that Plaintiff's psychiatric treatment beyond medication was minimal (Tr. 26-27). The ALJ also noted that Plaintiff was able to perform daily living activities, (Tr. 26-27), and Plaintiff had not been referred for physical therapy treatment, pain management, or surgical intervention (Tr. 27).

The ALJ gave little weight to the state agency medical consultants' assessments that Plaintiff could perform medium work, but did agree with the limitations regarding dust and fumes as this was consistent with her COPD diagnosis (Tr. 28). The ALJ also gave little weight to the opinion of Mr. Clever, a nurse practitioner, that Plaintiff would be off task for 60% of the time, that her mental impairments would frequently preclude her remembering simple and detailed instructions and the like.  The ALJ noted that Mr. Clever as a nurse practitioner was not an acceptable medical source to give such opinions.  (Tr. 28-29).  However, he considered Mr. Clever's opinions regarding Plaintiff's mental impairments and found them to be inconsistent with the overall medical record.  In this regard, the ALJ noted there was no evidence that Plaintiff suffered more than moderate impairments related to her memory loss, or her attention and

concentration. The ALJ also noted that Plaintiff received only minimal mental health treatment (Tr. 29).

The ALJ gave some weight to the opinion of Dr. Purswani that Plaintiff could stand and walk for six hours in an eight-hour day, sit for eight hours, and frequently lift 35 pounds one-half the day (Tr. 29). The ALJ found this consistent with the overall record, but the ALJ found Plaintiff could only lift 20 pounds occasionally and 10 pounds frequently (Tr. 29).

The ALJ gave little weight to consultative examiner Dr. Blaine, who opined that Plaintiff could stand or walk for four hours, sit for six, and lift 25 pounds infrequently, five pounds frequently (Tr. 29). The ALJ found this inconsistent with not only the treatment records, but also Dr. Blaine's examination, which showed only a slightly reduced range of motion and tender points, but was otherwise normal (Tr. 29). The ALJ also noted that these limitations were largely based on Plaintiff's own reports to Dr. Blaine and not as a result of any specific knowledge or testing.

The ALJ gave some weight to the opinion of the consultative examiner, Arthur Stair, that Plaintiff could understand simple and detailed instructions, that Plaintiff had mild impairment in maintaining persistence and concentration, mild to moderate impairment in adapting to changes in the workplace, and moderate impairment with social relationships (Tr. 29, 306). The ALJ, however, limited Plaintiff to simple, routine jobs to give Plaintiff the benefit of the doubt regarding her reports of problems with concentration and persistence. (Tr. 29). The ALJ also gave some weight to Dr. Sims' opinion that Plaintiff was only mildly limited in memory functioning, her ability to sustain concentration, her ability to relate socially, and her ability to adapt to changes. The ALJ, however, limited Plaintiff to working with things rather than with people and limited her to simple, routine jobs to take into account Plaintiff's reports (Tr. 29).

The ALJ also considered Plaintiff's global assessment of functioning score of 51, which

9

was consistent with moderate symptoms and difficulty in social functioning (Tr. 29-30). Accordingly, the ALJ gave the score some weight as consistent with the overall record (Tr. 30).

After determining that Plaintiff had a RFC to perform light work with certain limitations, the ALJ relied upon the VE's testimony to find that other jobs existed in the national economy that Plaintiff could perform. Accordingly, the ALJ found Plaintiff was not disabled.

## VI. Analysis

Plaintiff raises one issue on appeal. Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not properly evaluate and weigh Dr. Blaine's opinion. The ALJ gave little weight to Dr. Blaine's opinion that Plaintiff could stand/walk for four hours, sit for six hours in an eight-hour day, and lift 25 pounds infrequently, five pounds frequently (Tr. 29). The ALJ found Dr. Blaine's opinion was not consistent with the treatment record and more based upon Plaintiff's reports rather than objective findings (Tr. 29). The ALJ did, however, acknowledge Dr. Blaine's findings of slightly reduced range of motion and subjective tender points (Tr. 29).

The ALJ's duty is to resolve conflicts in the medical opinion evidence based on a reasoned review of the medical evidence as a whole. See *Justice v. Comm'r of Soc. Sec.*, 515 F.App'x 583, 588 (6th Cir. 2013)("In a battle of the experts, the agency decides who wins"). In this case, the ALJ properly weighed the medical opinion of Dr. Blaine. The ALJ discounted Dr. Blaine's opinion because in reviewing the medical record, Plaintiff exhibited normal gait, station, tandem walking, and toe and heel walking, all of which was inconsistent with the limitations imposed by Dr. Blaine. Even Dr. Blaine noted that Plaintiff had 5/5 strength which was also inconsistent with Dr. Blaine's own lifting restrictions.

But that is not all the ALJ did. Rather than simply discounting the opinion of Dr. Blaine,

the ALJ credited the testimony of other medical sources. In this case, the ALJ had the opinion of Dr. Purswani who opined that Plaintiff could lift 35 pounds, sit for eight hours, stand for six hours, and walk for six hours (Tr. 302). The ALJ evaluated Dr. Purswani's opinion and further restricted Plaintiff's lifting ability to 20 pounds occasionally and 10 pounds frequently based on his review of the medical record. (Tr. 24). The ALJ also had the opinion of Mr. Clever, who opined that Plaintiff had no limitations in sitting, standing, walking, stopping, or climbing (Tr. 28-29, 502). While he did not credit Mr. Clever's opinion regarding Plaintiff's mental impairments, the ALJ certainly considered Mr. Clever's opinion regarding Plaintiff's physical limitations.

The ALJ also properly considered the opinions of the state agency medical consultants who reviewed the medical records. Dr. Settle opined that Plaintiff could perform medium work with frequent posturals with no concentrated exposure to pulmonary irritants (Tr. 62-66). Dr. Parrish also reviewed the medical records and concurred with the opinion of Dr. Settle (Tr. 103-06). Both of the state agency medical consultants found Dr. Blaine's opinion overly restricted based on their review of the medical record. The ALJ discounted these opinions because he limited Plaintiff to light work based on Plaintiff's COPD. While the ALJ did not incorporate their opinion regarding frequent posturals in his RFC formulation, as the Commissioner notes, that was not necessary because none of the jobs identified by the VE require more than occasional postural activities. [Doc. 25, pg 11, fn. 2].

The ALJ properly analyzed Plaintiff's subjective allegations in assessing her RFC. Although she suffered from COPD, the ALJ noted that Plaintiff continues to smoke a pack of cigarettes a day (Tr. 21). Although she complained of a number of other physical ailments, such as migraines, irritable bowel syndrome, and hypertension, Plaintiff was able to control all of these impairments with medication. See *Smith v. Comm'r of Soc. Sec.*, 564 F. App'x 758, 763 (6th Cir

2014)(citations omitted). Plaintiff complained of having extreme difficulty sitting, standing, walking and lifting. Yet, in contrast to her subjective allegations, she presented a normal gait, station, heel and toe walking, tandem walking; she exhibited full strength on examination, and had intact sensations (Tr. 300-03, 310, 322, 381, 383). Although she alleged she suffered from fibromyalgia, the ALJ correctly observed that she had never been diagnosed with that impairment (Tr. 21, 25, 27). Moreover, the ALJ properly evaluated Plaintiff's statements regarding the effect of her symptoms which she claimed were caused by the undiagnosed fibromyalgia. See SSR 12-2p. This analysis was proper because even if the ALJ erred in this regard, "a diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits." *Vance v. Comm'r of Soc. Sec.*, 260 F.App'x 801, 806 (6th Cir. 2008). The regulations require the ALJ to evaluate Plaintiff's symptoms, which he did. See SSR 12-2p. Though she claimed her COPD was disabling, all of her chest x-rays were normal, and her pulmonary function test only showed mild obstruction (Tr. 24-25, 27). The ALJ properly evaluated Plaintiff's allegations regarding her limitations in light of the medical evidence as a whole in reaching the RFC. The Court finds that the RFC is supported by substantial evidence.

At step five in the sequential process, the burden is on the Commissioner to show that the claimant remains capable of performing alternative work in the national economy given her RFC, age, education, and past relevant work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). In this case, the ALJ utilized the expert services of a vocational expert, Dr. Cathy Sanders, who identified other jobs in sufficient numbers that were consistent with Plaintiff's RFC (Tr. 47-51).

The Court finds that the hypothetical posed to the VE was supported by substantial evidence. The ALJ had a basis in the objective medical evidence to conclude that Plaintiff retained

the ability to engage in light work, with the restrictions that she be limited to simple, repetitive work, with no excessive exposure to dust or fumes, that she work with things rather than people, and that she could relate to her co-workers and supervisors (Tr. 47). Based upon that hypothetical, the VE identified jobs a claimant could perform, including the representative occupations of food preparer, inventory clerk, and mail sorter (Tr. 47-49). The VE testimony, in response to a properly formulated hypothetical question, constitutes substantial evidence supporting the Commissioner's decision to find Plaintiff not disabled. 20 C.F.R. § 404.1566(e). Because there are jobs Plaintiff can perform and because they exist in sufficient numbers in the economy, the ALJ concluded Plaintiff was not disabled; substantial evidence supports that conclusion.

## VII. Conclusion

For the reasons stated, Plaintiff's motion for summary judgment [Doc. 21] is DENIED and the Commissioner's motion for summary judgment [Doc. 24] is GRANTED. This matter is dismissed for the reasons outlined herein. A separate judgment shall enter.

SO ORDERED:

s/Clifton L. Corker
United States Magistrate Judge